## APPEAL OF J. H. McDERMOTT OIL CO.

Docket No. 3579.  Submitted July 1, 1925.  Decided February 11, 1926.

Commissioner's determination of taxable gain from sale of oil wells and equipment approved.

*J. V. Blair, Jr., Esq.*, for the taxpayer.
*Arthur J. Seaton, Esq.*, for the Commissioner.

Before GREEN, LANSDON, and LOVE.

This is an appeal from the determination of a deficiency in income and profits taxes for the year 1919 in the amount of $4,513.71. The sole issue involved in this appeal relates to the amount of profit realized by the taxpayer upon the sale in 1919 of certain oil leases.

### FINDINGS OF FACT.

Taxpayer is a West Virginia corporation, with its principal office at Morgantown. It is engaged in the business of leasing oil lands and in the production of oil from such lands.

On November 1, 1916, the taxpayer acquired from J. H. McDermott certain oil leases, known as the Jakes Run Leases and the Bell Leases, together with all the physical properties comprising the producing and well equipment, for a consideration of $250,000 par value of its capital stock.

On January 1, 1919, taxpayer sold the Jakes Run Leases and the Bell Leases, including all the physical properties, for considerations of $150,000 and $7,080, respectively, and in its return for the year 1919 reported a profit from the sale of these leases in the amount of $23,510.82.

Upon audit of the return of this taxpayer, the Commissioner increased the net income by the amount of $21,850.69, additional profit realized from the sale of these leases. The result of the Commissioner's computation is as follows:

| | | |
|---|---:|---:|
| Selling price of Jakes Run Leases | | $150,000.00 |
| Selling price of Bell Leases | | 7,080.00 |
| Total | | 157,080.00 |
| Cost of Jakes Run Leases | $118,644.40 | |
| Cost of Bell Leases | 2,653.69 | |
| Cost of additions | 7,098.89 | |
| Total | 128,396.98 | |
| Less depreciation sustained to date of sale | 16,678.49 | |
| | | 111,718.49 |
| Total profit from sale of leases | | 45,361.51 |
| Less profit reported in return | | 23,510.82 |
| Additional profit | | 21,850.69 |

### DECISION.

The determination of the Commissioner is approved.

### OPINION.

GREEN: The taxpayer comes before us appealing from the action of the Commissioner outlined in our findings of fact, but admitting in its petition an additional profit from the sale of these leases of $12,024.26 over and above the amount of profit reported in its return.

It thus admits a total profit from the sale of these leases of $35,535.08, while the Commissioner contends the profit realized was $45,361.51, a difference of $9,826.43. This difference is attributable to two factors: (1) Taxpayer alleges the cost of the leases and improvements was $128,702.50, while the Commissioner's·computation is based upon a cost of $128,396.98, a difference of $305.52; and (2) taxpayer alleges the depreciation sustained to date of sale was $7,157.58, while the Commissioner computes the depreciation sustained to date of sale to be $16,678.49, a difference of $9,520.91.

As pointed out in our findings of fact, these leases and physical properties were paid in to the taxpayer for capital stock. No evidence has been adduced by the taxpayer to show the actual value of the capital stock which it issued· in exchange for these properties. From the testimony of the secretary-treasurer of the company, the only witness placed on the stand, we find that the costs upon which the taxpayer bases its computation of profit were obtained from an inventory alleged to have been made at the time the properties were paid in, the inventory values having been supplied by a previous superintendent of the properties. The inventory was offered in evidence but, upon objection by counsel for the Commissioner, it was excluded. It was apparent that the witness had no personal knowledge of the facts.

We have no evidence before us to show the actual costs of the properties involved in this sale. Such being the case, we must hold that the taxpayer has failed to show error in the Commissioner's determination of costs.

With respect to the question of the amount of depreciation sustained on these properties to the date of sale, we have no evidence before us which would warrant us in overturning the Commissioner's determination. The leases were not introduced in evidence. We have no knowledge of the length of the term or their remaining life from the date of acquisition. As to the. physical property, no evidence was adduced to show the remaining useful life from the date of acquisition. The witness testified that in his opinion 10 per cent depreciation on the producing equipment would be sufficient to take care of ordinary wear and tear. But his qualifications, as he related them on the stand, are such as entitle his opinion to little weight in a matter of this nature. An attempt was made to divide the depreciable property into two classes—" well equipment " and " producing equipment." The nature of the property falling within each classification was not disclosed to us, and the record does not show the values and life of the assets claimed to be within each classification.